E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1259
    Facsimile: (213) 894-0141
    E-mail:    alexander.schwab@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-519(A)-VAP |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: July 25, 2023<br>Hearing Time: 10:00 a.m. |
| WING HONG LEE, | Location:    Courtroom of the<br>Hon. Virginia A. |
| Defendant. | Phillips |

    Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney Alexander Schwab,

hereby files its sentencing position.

    This sentencing position is based upon the attached memorandum

of points and authorities, the files and records in this case

//

//

(including the presentence investigation report ("PSR")), and such further evidence and argument as the Court may permit.

Dated: July 11, 2023                    Respectfully submitted,

                                        E. MARTIN ESTRADA
                                        United States Attorney

                                        MACK E. JENKINS
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                             /s/
                                        _____
                                        ALEXANDER B. SCHWAB
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Over the course of years, defendant embezzled nearly half a million dollars from his employer and cheated on his taxes.  The nature of the crime and need for deterrence both support a guideline sentence, and while defendant's arguments for a departure or variance ultimately fail, they do support a sentence at the low end of defendant's range.  The government therefore requests that the Court impose a sentence of 18 months' imprisonment, three years of supervised release, and restitution of $659,177.

## II.   STATEMENT OF FACTS

Defendant agreed, as part of his plea agreement and at his change of plea, to the following facts:

At times relevant to the first superseding information, defendant was employed as a sales manager by Maxtrade LLC, a wholesaler and retailer of recreational vehicle and motorsports accessories.  As a sales manager, defendant's responsibilities included processing customer orders, creating invoices, arranging for the shipment of customer orders, and collecting payment from Maxtrade's customers, as well as conducting an annual inventory count of Maxtrade's goods.  Beginning no later than January 2011 and continuing through in or around November 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud Maxtrade as to material matters, and to obtain money, funds, assets, and other property from Maxtrade by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

In his capacity as a sales manager, defendant processed customer orders for Maxtrade and created invoices for those orders. Defendant then obtained the authorization of a Maxtrade accountant for the shipment of the ordered goods from Maxtrade's warehouse to the Maxtrade customers and provided Maxtrade's warehouse with copies of the corresponding invoices, causing the goods to be shipped by Maxtrade to the customers. After the goods had been shipped and received by the customers, defendant falsely and fraudulently informed Maxtrade's accounting department that the customers had cancelled the orders. As a result of these false and fraudulent representations, and as defendant intended, Maxtrade's accounting department did not expect to receive any payment from the customers for the orders. In reality, the customers had not cancelled the orders, Maxtrade had already shipped the goods, and defendant stole the money the customers owed to Maxtrade for the goods they had received. And, without Maxtrade's knowledge or authorization, defendant caused Maxtrade's customers to remit the money the customers owed to Maxtrade to defendant instead, including by providing payment instructions directing the customers to wire the funds comprising the payments for the Maxtrade goods to a Citibank checking account for which defendant was the sole signatory. For example, on November 9, 2016, defendant caused a Maxtrade customer to transfer approximately $8,340 by means of interstate wire transfer to his Citibank account. As a result of this fraudulent scheme, defendant misappropriated approximately $478,434 in funds intended for Maxtrade.

Defendant failed to report on his federal tax returns filed for tax years 2011 through 2015 the income he derived from the criminal

schemed described above.  For instance, on April 15, 2016, defendant made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for calendar year 2015, which was filed with the Internal Revenue Service and verified by a written declaration that it was made under the penalties of perjury.  In that tax return, defendant willfully reported on line 22 that his taxable income for calendar year 2015 was $40,194, when, as he then well knew, that figure did not include $76,272 in funds embezzled from Maxtrade, which would have increased his tax due and owing for that year by $27,812.  Likewise, defendant willfully failed to file a federal income tax return for tax years 2010 or 2016, for which he received unreported income of $5,130 and $218,218, respectively. Defendant's total tax due and owing to the IRS based on unreported income for tax years 2010 through 2016 is approximately $180,743. (Plea Agreement ¶ 12, at 9-11).

**III. SENTENCING GUIDELINES**

As part of the plea agreement, the parties stipulated to the following sentencing guidelines:

| | | |
|---|---|---|
| Base Offense Level | 16 | USSG §§ 2T1.1(a)(1); |
| | | 2T4.1(F) |
| Source of Income > $10,000 in Criminal Activity | +2 | USSG § 2T1.1(b)(1) |
| Acceptance of Responsibility | -3 | USSG § 3E1.1 |

The PSR reaches the same conclusion.  (PSR 3).  The result is a total offense level of 15 and a guideline range of 18 to 24 months' imprisonment.

**IV.  ARGUMENT**

    **A.  The Nature of Defendant's Crime and Need for Deterrence Support a Guideline Sentence**

    Over the course of several years, defendant betrayed his employer, siphoning off hundreds of thousands of dollars in sales through a cleverly orchestrated scheme.  After doing so, defendant consistently cheated on his taxes, intentionally failing to disclose the illegally obtained income and failing to file returns altogether some years.  Defendant's crime required careful planning and a sustained intent to victimize his former employer.  It must be met with an adequate prison sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).

    Economic crimes like defendant's are also deterrable so long as they are met with a sufficient term of imprisonment.  "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'"  United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)).  In fact, Congress, in drafting § 3553, confirmed that this common-sense principle was one of the driving forces for including deterrence among the goals of sentencing.  See S. Rep. No. 98-255, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("To deter others from committing the offense . . . is particularly important in the area of white collar crime.").  Congress was, in fact, expressly concerned with the fact that "[m]ajor white collar criminals often are sentenced to . . . little

4

1  or no imprisonment," which the offenders disregard as "a cost of

2  doing business."  Id.

3      If truth be told, even with a guarantee of eventual

4  apprehension, many individuals would gladly accept the prospect of a

5  brief stint in prison -- let alone the probationary sentence

6  defendant is requesting -- in exchange for nearly half a million

7  dollars.  And, of course, there is no guarantee of apprehension at

8  all, particularly when the crime is committed by a trusted insider,

9  like the defendant.  To afford adequate deterrence, the sentence in

10  this case must therefore account both for the profitability of fraud

11  schemes like defendant's and the difficulty in uncovering them.

12      While defendant is correct that the losses at issue here --

13  $478,434 to Maxtrade and $180,743 to the IRS -- are not as eye-

14  popping as those in some fraud schemes in the district, that fact is

15  already accounted for adequately by defendant's sentencing

16  guidelines, which prescribe a range of 18 to 24 months' imprisonment.

17  An 18-month sentence appropriately accounts for the relative severity

18  of defendant's crime.

19      **B.  Defendant Requests a Below-Guideline Sentence Based on
        Factors Prohibited from Consideration under the Sentencing**

20      **Guidelines**

21      Defendant seeks a below-guideline sentence for various reasons

22  that are improper under the Sentencing Guidelines.  First, he argues

23  that the "underlying cause" of his crimes "was his compulsion to bet

24  on horse races, which led him to embezzle $478,000 from MaxTrade and

25  lose those funds and much of his own salary betting on horse races."

26  (CR 25, at 2).  Contrary to defendant's claim otherwise, the

27  Sentencing Guidelines explicitly prohibit consideration of gambling

28  addiction as a mitigating factor in support of a downward departure.

5

USGG § 5H1.4 ("Addiction to gambling is not a reason for a downward departure.").[1]  Common sense dictates the same result: If gambling addiction is an irremediable compulsion, then defendant poses all the greater danger to society and the need for specific and general deterrence increases; if, on the other hand, gambling addiction can be overcome -- a hypothesis that defendant's own subsequent behavior in this case supports -- then it should be viewed as no more a mitigating factor than any other motive driving a defendant's criminal conduct.

Defendant also argues that because he has purportedly "overc[o]me this compulsion," he should receive a below-guideline sentence.  (CR 25, at 2).  Even assuming, as defendant contents, that his poker playing is not part of the same compulsion, defendant's efforts to better himself support a three-level reduction in his offense level for acceptance of responsibility, not a further departure or variance.  In determining whether a defendant merits a reduction for acceptance of responsibility, the Sentencing Guidelines already account for "post-offense rehabilitative efforts."  USSG § 3E1.1, comment. (n.1(G)).  Defendant should not receive a further reduction for merely doing what is expected of defendants who accept responsibility.  At best, it is simply further support for the

---

[1] Because USSG § 5H1.4's prohibition on downward departures for gambling addictions is a result of the 2003 amendments, see USSG amend. 651 (2003), many of the cases he cites are inapposite, since they predate the ban.  E.g., United States v. Sadolsky, 234 F.3d 938 (6th Cir. 2000).  While United States v. Vieke, 348 F.3d 811 (9th Cir. 2003), postdates amendment 651 by a few days, the amendment was never addressed and the holding in any event pertained to the government's preservation of its objection, not the general propriety of considering gambling addictions in crafting appropriate sentences.

6

recommendation of the government and the Probation Office that defendant be sentenced to the low end of his guideline range.

The same is also true of defendant's claim that he should receive a lower sentence because he "fully accepted responsibility from the very beginning." (CR 25, at 11). As an initial matter, this is factually untrue; defendant committed his crimes over the course of years, was indicted in 2021, and only pleaded guilty in 2023. That he may have planned all along to plead guilty is irrelevant; there was nothing "extraordinary" about his acceptance of responsibility. It was instead precisely the ordinary acceptance of responsibility on display in the average case. But as a legal matter, even if defendant was unusually swift or complete in his acceptance of responsibility, "the court may not depart from the applicable guideline range based on . . . [t]he defendant's acceptance of responsibility for the offense, which may be taken into account only under § 3E1.1." USSG § 5K2.0(d). At best, it is an argument that defendant receive a low-end sentence, which is precisely what the government and the Probation Office have recommended.

Finally, because "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted," USSG § 5H1.6, defendant similarly should not receive leniency based on the potential "negative impact" his incarceration will have on his teenage children. (CR 25, at 4). While the commentary to the guideline allows for departures in very limited circumstances, "the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient

as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration." Id. § 5H1.6, comment. (n.(B)(ii)). Rather, to be eligible for such a departure, defendant would have to show that "[t]he loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant." Id. Defendant is divorced, his children reside fulltime with his ex-wife, and though he provides them some share of his poker winnings, it does not appear he is their principal means of support. (PSR ¶¶ 59, 62, 63, 79, at 10, 12). Nothing about defendant's circumstances are atypical of a criminal defendant about to face prison time.

It is true that the prohibitions on the departures defendant seeks are themselves part of a Sentencing Guidelines regime that is advisory rather than mandatory. Yet it remains the case that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." United States v. Booker, 543 U.S. 220, 264 (2005). Nor is this a situation the Sentencing Guidelines fails to contemplate. Rather, defendant requests departures on grounds the Sentencing Commission and Congress explicitly rejected. That determination should be given substantial weight.

**V.    RESTITUTION**

Consistent with the plea agreement, the government requests that the Court impose total restitution of $659,177, which comprises:

$180,743 owed to the Internal Revenue Service

$478,434 owed to defendant's former employer, MaxTrade LLC.

## VI.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose a sentence of 18 months' imprisonment to be followed by three years of supervised release, restitution of $659,177, and a $100 special assessment.